UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN A. MCDONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 5230 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

John A. McDonnell brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying his applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court reverses the Commissioner's decision.

**Background**

Plaintiff applied for benefits on March 29, 2007, alleging a disability onset date of January 1, 2003. (R. 148, 150.) His applications were initially denied on August 22, 2007, and again on reconsideration on June 19, 2008. (R. 75, 91.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on August 11, 2009. (R. 14-52.) On September 2, 2009, the ALJ issued a decision finding plaintiff disabled but only as of March 15, 2007, almost three months after his last insured date of December 31, 2006. (R. 61-72.) The Appeals Council declined to review the decision, and plaintiff appealed to this Court, which remanded the case to the Commissioner for further proceedings. (R. 1-5, 648.) The ALJ held a

second hearing on March 24, 2015 (R. 556-634), and on April 10, 2015, she again found that plaintiff's disability onset date was March 15, 2007 (R. 525-46). The Appeals Council declined review, leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any

other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2003. (R. 528.) At step two, the ALJ determined that, as of the alleged disability onset date, plaintiff had the severe impairments of "left hand amputated fingers; obesity; and right inguinal hernia," and as of the determined disability onset date, March 15, 2007, he had the severe impairments of "major depressive disorder (MDD); post-traumatic stress disorder (PTSD); left hand amputated fingers; obesity; history of right inguinal hernia with recurrence; [and] degenerative joint disease (DJD) of the lumbar spine and the left knee." (*Id.*) At step three, however, the ALJ found that, as of January 1, 2003, plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 531.) At step four, the ALJ found that, prior to March 15, 2007, plaintiff had the residual functional capacity ("RFC") "to perform light work . . . in that he could sit for six to eight (6-8) hours, and stand or walk at least six (6) hours . . . in an eight-hour workday, with normal breaks, and could lift and carry up to twenty (20) pounds occasionally and ten (10) pounds frequently, except: [he] could never grasp, perform fine manipulations, or finger with his left non-dominant hand." (R. 535.) After March 15, 2007, the ALJ found, plaintiff had the RFC

> to perform light work . . . in that he could sit six to eight (6-8) hours, and stand or walk at least six (6) hours, in an eight-hour workday, with normal breaks, and can lift and carry up to twenty (20) pounds occasionally and ten (10) pounds frequently, except: [he] can never grasp, perform fine manipulations, or finger

3

> with his left non-dominant hand; . . . can never climb ladders, ropes or scaffolds; . . . can occasionally climb stairs and ramps, and stoop, crawl, crouch, kneel, or balance; . . . should avoid concentrated exposure to activities involving unprotected heights and being around moving and hazardous machinery; . . . is limited to unskilled work with a specific vocational preparation of two; . . . would be off task 20 percent of the workday, and miss two or more days of work per month.

(R. 538.) At step five, the ALJ determined that plaintiff had been unable to perform any past relevant work since January 1, 2003. (R. 543.) She also determined that before March 15, 2007, "there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed," but after that date there were not. (R. 544-45.) Accordingly, the ALJ found that plaintiff was disabled as of March 15, 2007, but not before, and thus was not disabled as of his last insured date of December 31, 2006. (R. 545.)

Plaintiff says the ALJ erroneously concluded that his depression was not disabling before March 15, 2007. In determining the disability onset date, an ALJ must consider "[the claimant's] allegations, work history, if any, and the medical and other evidence concerning impairment severity." *See* SSR 83-20, 1983 WL 31249, at *2 (1983). "The starting point" of the analysis "is the individual's statement as to when disability began," and that date "should be used if it is consistent with all the evidence available." *Id.* at *2-3. "However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.* at *3. "This does not mean that a claim is doomed for lack of medical evidence establishing the *precise* date an impairment became disabling." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) (emphasis in original). Rather, "the ALJ must 'infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process' and should seek the assistance of a medical expert to make this inference." *Id.* (quoting SSR 83-20, 1983 WL 31249, at *2).

The ALJ found that plaintiff had the medically determinable mental impairment of depression as of January 2006, but that the symptoms were only mildly limiting before March 15, 2007 because: (1) plaintiff did not seek treatment until May 2007; (2) Dr. Henson, an agency psychologist who examined plaintiff in August 2007, opined that plaintiff had had a Global Assessment of Functioning ("GAF")[1] score of 65 for the previous twelve months; and (3) there were no "clinical [or] laboratory findings" that established the existence of severe depressive disorder before that date. (R. 529-30; *see* R. 339, 351.)

In reaching this determination, the ALJ rejected the opinion of Dr. Couch, a psychiatrist who examined plaintiff in May 2007 and assigned him a GAF of 50, because Dr. Couch "never mentioned applicability of the assigned GAF score before May 2007." (R. 530.) That ambiguity, however, should have prompted the ALJ to seek clarification from Dr. Couch, not to reject the opinion. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."); SSR 96-2p, 1996 WL 374188, at *4 ("[I]n some instances, additional development required by a case—for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings—may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking . . . ."). Moreover, even without clarification, Dr. Couch's opinion conflicts with Dr. Henson's conclusion that plaintiff had a GAF of 65 from August 2006 through August 2007, a conflict the ALJ neither acknowledged nor resolved. Also absent from the ALJ's analysis is discussion of a social worker's April 2007 diagnosis of plaintiff as having "major depression, recurrent, severe" (R. 383), a diagnosis that assumes

---

[1] The GAF scale, which goes from 0-90, "is a hypothetical continuum of mental health-illness used to determine psychological, social, and occupational functioning." *Bartrom v. Apfel*, No. 00-149, 2000 WL 1412777, at *1, n.3 (7th Cir. Sept. 20, 2000) (quotation omitted). As relevant here, a score of 61-70-indicates mild symptoms; a score of 41-50 indicates serious symptoms. *Id.*

plaintiff had at least two depressive episodes of at least two weeks' duration that occurred at least two months apart. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 160-62 (5th ed. 2013). The ALJ also failed to explicitly consider that plaintiff told the social worker he had been treated with anti-depressants by "Community Health on Chicago Avenue about two years ago," *i.e.*, in 2005 (R. 371), and apparently made no effort to obtain the records of that treatment. Given these evidentiary voids and analytical lapses, the ALJ's determination of plaintiff's disability onset date is not supported by substantial evidence.

Plaintiff further contends that the ALJ erred in determining the onset date of his back and knee impairments, and thus his RFC on his date last insured. The Court agrees. The ALJ said these impairments were not severe until "later than March 2007," citing a June 2007 report completed by plaintiff's treating physician, Dr. Munoz. (*See* R. 531.) In that report, Dr. Munoz says x-rays show that plaintiff has degenerative joint disease ("DJD") in his lower back and knees. (*See* R. 281.) Dr. Munoz opines that plaintiff's conditions make him able to sit, stand, or walk for less than two hours in an eight-hour work day and require him to take unscheduled breaks every twenty minutes. (R. 282-84.) The June 2007 report does not, however, state when the disease processes began or when they became disabling. Instead of seeking this information from Dr. Munoz or another medical expert or performing the disability onset analysis set forth in SSR 83-20, the ALJ simply concluded that these conditions were not medically determinable impairments before March 15, 2007 because they had not yet been diagnosed. (R. 531 ("[T]he undersigned reasonably infers that progressive conditions such as [DJD] were in existence, but not established to be severe, prior to the DLI [date last insured] based on the lack of diagnosis or treatment . . . .").) That was error. *See Briscoe*, 425 F.3d at 352 ("Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the

ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the onset date of disability."); *Barnett*, 381 F.3d at 669 (noting the ALJ's "duty to solicit additional information to flesh out" a medical opinion).

Plaintiff also contends that the ALJ failed to consider the combined effect of plaintiff's depression, obesity, and DJD and his need to lie down during the day in making the disability determination. The Court agrees: The ALJ addressed plaintiff's obesity (*see* R. 531-32), but said nothing about: (1) the opinion of Dr. Munoz, plaintiff's treating physician, that "emotional factors contribute[d] to the severity of [plaintiff's] symptoms and functional limitations" (R. 282); (2) the opinion of the independent medical expert, Dr. Rozenfeld, that "the emotional factor [has] exacerbated [plaintiff's] experience of pain" (R. 40); or (3) plaintiff's need to lie down to ease his fatigue and pain (R. 284). On remand, the ALJ must address these issues.

The Court also agrees that the ALJ's credibility determination is flawed. As the Appeals Council instructed, the ALJ evaluated plaintiff's credibility in accordance with the factors set forth in SSR 96-7p. *See id.*, 1996 WL 374186, at *3 (when assessing claimant credibility an ALJ must consider "in addition to the objective medical evidence": "1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . ; and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."); (R. 535-38, 653).

The ALJ reasoned:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not *entirely* credible prior to March 15, 2007, for the reasons explained in this decision.

(R. at 536.)

This reasoning has several flaws. First, the ALJ does not identify any particular reason to question the claimant's credibility, and there is no discussion elsewhere in the decision that sheds light on the ALJ's reasoning. (*Cf.* R. at 533 (describing claimant's description of disability as "implausible" but not explaining why).) Second, the ALJ's decision that the claimant's subjective description is not "entirely" credible does not justify wholesale discount of the claimant's statements. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (characterizing the language used here by the ALJ as "meaningless boilerplate" because it "yields no clue to what weight the trier of fact gave the testimony"). Finally, because we find error in some of the ALJ's reasoning, we cannot know if the reason(s) the ALJ relies on to wholly discount the claimant's descriptions are reasons that we have rejected. Therefore, the ALJ's wholesale discount of the claimant's subjective claims cannot be upheld on the current state of the record. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the ALJ's [credibility] determination lacks any explanation or support that we will declare it to be patently wrong and deserving of reversal.") (quotations omitted).

**Conclusion**

For the reasons set forth above, the Court reverses the Commissioner's decision and remands this case to the Commissioner for further proceedings consistent with this memorandum opinion and order.

**SO ORDERED.**                              **ENTERED:  February 14, 2017**


_____
**M. David Weisman**
**United States Magistrate Judge**